**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **STEPHANIE L. KENNEDY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION 09-00449-B** |
| | * | |
| **MICHAEL J. ASTRUE,** | * | |
| **Commissioner of** | * | |
| **Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

## ORDER

Plaintiff Stephanie L. Kennedy ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 <u>et seq.</u>, and 1381 <u>et seq</u>. On March 4, 2010, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 15). Thus, this case was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636 (c)and Fed.R.Civ.P. 73. (Doc. 16). Oral argument was held February 22, 2010. Upon careful consideration of the administrative record, oral arguments and the memoranda of the parties, the undersigned finds that the decision of the Commissioner is due to be **REVERSED** and **REMANDED**.

## I. **Procedural History**

Plaintiff protectively filed applications for disability income benefits and supplemental security income benefits on March 16, 2007. Plaintiff alleges that she has been disabled since April 5, 2006, due to psoriasis. (Tr. 112-118, 127). Plaintiff's applications were denied initially and she timely filed a Request for Hearing. (Tr. 41-53, 56). On March 12, 2009, Administrative Law Judge Warren L. Hammond, Jr. ("hereinafter ALJ Hammond") held an administrative hearing, which was attended by Plaintiff, her representative and a vocational expert ("hereinafter VE"). (Tr. 18-39). On April 1, 2009, ALJ Hammond issued an unfavorable decision finding that Plaintiff is not disabled. (Tr. 6-17). Plaintiff's request for review was denied by the Appeals Council ("AC") on June 10, 2009. (Tr. 1-4). As a result, the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. (Id.) The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. **Issue on Appeal**

Whether the ALJ erred in failing to give substantial weight to the opinion of Plaintiff's treating dermatologist.

## III. **Factual Background**

Plaintiff was born on February 27, 1972 and was 37 years old at the time of the March 12, 2009 administrative hearing. (Tr. 21, 112, 115). Plaintiff has a high school education, and last worked in 2006. (Tr. 127, 132). Plaintiff testified that in her last jobs, she was a machine operator at Southern Pride, and she lifted wood at Linden Lumber. (Tr. 22). According to Plaintiff, she broke out with a rash in April 2006, and had to stop working because she was itching so badly. (Tr. 24). Plaintiff testified that she takes medication for her rash, that her skin condition has improved, and that her medication causes her to be tired all the time, and to experience dry mouth. (Tr. 26). Plaintiff also testified that she experiences pain in her feet on a regular basis; however, she does not take any pain medication. (Tr. 25-26). Plaintiff further testified that she can feed, bathe, dress, shop or groceries, cook, and perform light housekeeping chores for herself and her two children. (Tr. 22, 27).

## IV. **Analysis**

### A. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.

3

<u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).[1]  A court

may not decide the facts anew, reweigh the evidence, or substitute

its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792

F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of

fact must be affirmed if they are based upon substantial evidence.

<u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth</u>

<u>v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding

substantial evidence is defined as "more than a scintilla but less

than a preponderance" and consists of "such relevant evidence as a

reasonable person would accept as adequate to support a

conclusion[]").  In determining whether substantial evidence

exists, a court must view the record as a whole, taking into

account evidence favorable, as well as unfavorable, to the

Commissioner's decision.  <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th

Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala.

June 14, 1999).

**B.  <u>Discussion</u>**

An individual who applies for Social Security disability

benefits must prove her disability.  20 C.F.R. §§ 404.1512,

416.912.  Disability is defined as the "inability to do any

substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

---

[1]This Court's review of the Commissioner's application of
legal principles is plenary.  <u>Walker v. Bowen</u>, 826 F.2d 996, 999
(11th Cir. 1987).

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[2]

---

[2]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2011, and that she has not engaged in substantial gainful activity since her alleged onset date. The ALJ concluded that while Plaintiff has the severe impairment of psoriasiform spongiotic dermatitis, it does not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Tr. 11, 13). The ALJ found that Plaintiff has the residual functional capacity for light work, excluding climbing, work around hazardous machinery or heights, and exposure to environmental irritants, and that she is unable to perform her past relevant work. (Tr. 13, 15). The ALJ also concluded that, considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 16).

The relevant evidence of record reflects that Plaintiff presented to Frank L. Dozier, M.D., on February 6, 2007. She complained of a rash all over her body, and Dr. Dozier prescribed Keflex[3] and Nizoral[4]. She returned to Dr. Dozier on February 14,

---

[3]Keflex is a cephalosporin antibiotic used to treat infections caused by bacteria. See, www.drugs.com. (Last visited February 3, 2010).

[4]Nizoral is an antifungal antibiotic used to treat infections caused by fungus. See, www.drugs.com. (Last visited February 3, 2010).

complaining of an itching type of rash for three to four days.  On physical exam, Plaintiff had reddened, circular lesions under both breasts and multiple circular lesions on her buttocks and arms. Dr. Dozier diagnosed her with impetigo[5] and dermatomycosis[6] and prescribed Nizoral cream and Keflex.  He also referred Plaintiff to Charles H. Behlen, M.D., at the Dermatology Center.  (Tr. 181).

Plaintiff was seen by Dr. Behlen at the Dermatology Center on March 7, 2007.  Dr. Behlen diagnosed Plaintiff with severe widespread psoriasis[7] and referred her to University of Alabama, Birmingham (hereinafter "UAB") for treatment.  (Tr. 229-231).

Plaintiff was treated by Hillary L. Hendrick, M.D. at the emergency room at UAB on March 21, 2007.  Plaintiff reported that the rash was itching and that it had continued to spread despite her having taken several medications.  On physical exam, Dr. Hendrick described the rash as 1 to 1.5 cm circular plaques with red margins and white dry scale, and surrounded by a rim of

---

[5]Impetigo is an acute contagious staphylococcal or streptococcal skin disease characterized by vesicles, pustules, and yellowish crusts.  See, www.nlm.nih.gov. (Last visited February 3, 2010).

[6]Dermatomycosis is a disease of the skin caused by infection with a fungus.  Also called epidermomycosis.  See, www.nlm.nih.gov. (Last visited February 3, 2010).

[7]Psoriasis is a chronic skin disease characterized by circumscribed red patches covered with white scales. See, www.nlm.nih.gov. (Last visited February 3, 2010).

erythema[8].   Dr. Hendrick also noted that the plaques merged to produce confluent erythroderma[9] on areas including the ears, lower back and anterior thighs, and that the lesions were covered in a dry yellow scale.   Dr. Hendrick diagnosed Plaintiff with severe refractory psoriasis and referred her to Kirklin Clinic.  (Tr. 183-184).

Plaintiff began treatment with dermatologist Naveed Sami, M.D., at Kirklin Clinic in March 2007.  (Tr. 196-197). On physical exam in April 2007, Dr.  Sami and dermatology resident Elise Lirette, M.D., noted significant erythematous[10] plaques on her scalp with overlying thick silvery scale, and erythematous nummular[11] to annular[12] plaques with overlying silvery scale over roughly 98% of her body.   They discontinued methotrexate.   (Tr. 194).   A 4-mm

_____

[8]Erythema is the abnormal redness of the skin due to capillary congestion (as in inflammation). See, www.nlm.nih.gov. (Last visited February 3, 2010).

[9]Erythroderma is a definitive term that refers to a scaling erythematous dermatitis involving 90% or more of the cutaneous surface.  See, www.emedicine.medscape.com.  (Last visited February 15, 2010).

[10]Erythematous is relating to or marked by erythema. See, www.nlm.nih.gov. (Last visited February 3, 2010).

[11]Nummular is characterized by circular or oval lesions or drops. See, www.nlm.nih.gov. (Last visited February 3, 2010).

[12]Annular is of, relating to, or forming a ring. See, www.nlm.nih.gov. (Last visited February 3, 2010).

punch biopsy resulted in a finding of psoriasiform dermatitis[13] with subacute spongiotic dermatitis[14]. (Tr. 202, 213).

Dr. Sami's treatment notes dated April 20, 2007 reflect that Plaintiff was erythrodermic[15] the prior week, that she had been started on prednisone for five days and that she was currently on a reduced dosage of prednisone for the next five days. Plaintiff reported significant improvements since the prior week, and that most of her erythroderma had resolved. Dr. Sami noted significant post-inflammatory hyperpigmentation[16], and that Plaintiff had continued to use tobacco in spite of the recommendation that she discontinue it. He noted her negative serological work-up and that her AST[17] continued to come down but had not yet reached baseline

---

[13]Psoriasiform dermatitis is inflammation of the skin, resembling psoriasis or a psoriatic lesion. See, www.nlm.nih.gov. (Last visited February 3, 2010).

[14]Subacute spongiotic dermatitis is a form of eczema or dermatitis. It has smaller blisters, developed by intercellular edema, than those in acute spongiotic dermatitis, and subacute spongiotic dermatitis has greater thickening of the prickle-cell layer of the skin. See, www.dermatitisanswers.com. (Last visited, February 3, 2010.)

[15]Erythrodermic psoriasis is a particularly inflammatory form of psoriasis that often affects most of the body surface. See, www.MedicineNet.com. (Last visited, February 5, 2010).

[16]Hyperpigmentation is excess pigmentation in a bodily part or tissue. See, www.nlm.nih.gov. (Last visited February 3, 2010).

[17]Angiotensin sensitivity test is positive when an effective pressor dose causes a rise in diastolic blood pressure. See, www.medical-dictionary.thefreedictionary.com. (Last visited February 3, 2010).

and within normal limits. Dr. Sami's impressions were of resolved exfoliative[18] erythroderma. He continued Plaintiff on a tapering dose of prednisone, and instructed her to see her primary care physician for control of her blood pressure. (Tr. 191).

Plaintiff next saw Dr. Sami on April 27, 2007. Dr. Sami observed that Plaintiff had improved significantly since being on prednisone, and she reported no new areas of involvement. Plaintiff reported that she stopped chewing tobacco, and that her primary care physician told her that her blood pressure was normal. Dr. Sami's assessments were of subacute spongiotic dermatitis, and drug eruption versus allergic contact dermatitis. Plaintiff was instructed to continue a tapering dose of prednisone, the methotrexate was resumed, and Plaintiff was advised against consuming any alcohol. (Tr. 189).

Plaintiff returned to Dr. Sami for follow-up on May 4, 2007. Dr. Sami noted that Plaintiff had misunderstood instructions and took methotrexate every day for five days, instead of taking only one dose. He noted areas of pus formation under the right axilla[19], right lower extremity and buttocks. On physical exam, Dr. Sami noted hyperpigmented patches of scale on Plaintiff's hands and feet, a large pustule on her right lower extremity and few pustules

---

[18]Exfoliative is the peeling of the horny layer of the skin. See, www.nlm.nih.gov. (Last visited February 3, 2010).

[19]Axilla is the armpit. See, www.nlm.nih.gov. (Last visited February 3, 2010).

on the right axilla.  He prescribed prednisone at a reduced dose, and instructed Plaintiff to clean areas that appear infected.  (Tr. 188).

During a May 16, 2007 visit, Dr. Sami noted that Plaintiff's liver function tests were mildly elevated due to Plaintiff's confusion in taking methotrexate two weeks before.  Plaintiff reported that she had no new lesions and that she was improving as most of the areas were well healed.  The methotrexate and folic acid[20] were resumed, and the prednisone was continued.  (Tr. 245).

Plaintiff was next seen by Dr. Sami on May 23, 2007.  Dr. Sami noted that Plaintiff's exfoliative erythroderma was presumed to be either allergic contact dermatitis or possibly the result of chewing tobacco she consumed on a regular basis.  Plaintiff reported tolerating a tapered dose of prednisone and methotrexate well, and that she had no side effects.  (Tr. 244).

Plaintiff saw Dr. Sami in June, July and August of 2007. While Plaintiff reported that she was no longer consuming any form of tobacco, Dr. Sami noted her chewing tobacco as a possible culprit of the eruption.  Plaintiff reported tolerating all medications well.  During July, numerous hyperpigmented patches were noted on Plaintiff's upper and lower extremities, back, chest and lower

[20]Folic acid is a type of B vitamin that helps your body produce and maintain new cells. See, www.drugs.com.  Last visited, February 2, 2010.

legs.  Plaintiff was diagnosed with spongiotic dermatitis and seborrheic dermatitis[21], and prescribed an increased dose of methotrexate.  (Tr. 241-242).

Dr. Sami completed a Statement of Incapacitating Condition on August 16, 2007.  He opined that Plaintiff should avoid contact with any chemicals and avoid too much sun exposure.  He further opined that Plaintiff's condition does not eliminate all likelihood of her ability to ever engage in gainful employment again, that her condition substantially reduces her ability to work, and that she is restricted to part-time work.  (Tr. 227).

Plaintiff was treated by Dr. Sami on approximately eight occasions during 2008[22].  During June, Plaintiff reported being out of methotrexate for approximately one month.  Plaintiff reported an eruption of lesions over the past month, and that she was essentially clear as long as she was on methotrexate and prednisone. It was also noted that Plaintiff reported tolerating the methotrexate and prednisone well.  (Tr. 237-238).  During a July 16th visit, Dr. Sami observed that Plaintiff did not come for regular follow-ups, that her AST was elevated on her last visit,

---

[21]Seborrheic dermatitis is a red, scaly, itchy dermatitis chiefly affecting areas with many large sebaceous glands, like the face, scalp, or chest.  See, www.nlm.nih.gov. (Last visited February 3, 2010).

[22]Dr. Sami was sometimes assisted by dermatology resident Fajat Varma, M.D.

and that she denied alcohol use.  (Tr. 236).  During a July 29th visit, Dr. Sami observed that Plaintiff previously had elevated liver functions, but that they were back down to normal, and that she was tolerating her medication well and had made some improvement since her last visit.  (Tr. 235).  She was strongly encouraged to refrain from alcohol use. By her August 28 visit, Dr. Sami noted that Plaintiff had cleared up very well, and was tolerating the methotrexate well.  He further noted that Plaintiff was no longer consuming the "non-alcoholic beverage" and that her liver functions had improved. (Tr. 233).  When Plaintiff was seen by Dr. Sami on  October 8, 2008, he observed that she had been on methotrexate, which cleared her dermatitis very well.  (Tr. 234, 252, 256).

Dr. Sami completed a Medical Statement on November 25, 2008. He reported that Plaintiff suffers from eczematous dermatitis/severe psoriasis, that she has extensive lesions involving her feet and which cause marked limitations in function despite treatment, and that she has extensive lesions involving the axillae or perineum despite treatment.  He noted that Plaintiff's medication, methotrexate, increases her liver function, but that her liver function has improved.  Dr. Sami opined that Plaintiff can work four hours per day; stand 30 to 60 minutes a day; stand one to four hours in a workday; sit 30 to 60 minutes at a time; and sit two to four hours in a workday.  He further opined that

Plaintiff cannot lift any weight on a frequent basis, but that she can lift up to five pounds occasionally. He indicated that Plaintiff can do fine or gross manipulation with both hands frequently to constantly, can tolerate heat and cold occasionally to frequently, and that her pruritis is severe. Dr. Sami opined that Plaintiff has a severe form of eczema which, at points, has progressed to erythroderma. He noted this can be a life threatening condition if not controlled in a timely manner. (Tr. 247).

Dr. Sami also completed a Chronic Pain Assessment on November 25, 2008. He opined that Plaintiff needs to be evaluated by her primary care physician. He also opined that when the disease is present, and Plaintiff has an exacerbation, she suffers from moderate to moderately severe pain, and has marked restriction of activities of daily working and living, but that the disease is currently under control. (Tr. 249).

Dr. Sami completed a Physical Abilities and Limitations Evaluation form, which is undated. He diagnosed Plaintiff with severe eczema/severe psoriasis. He opined that Plaintiff is limited to standing 15 to 30 minutes at a time, and one to two hours total in a workday. He further limited Plaintiff to sitting 15 to 30 minutes at a time, and two to four hours total in a workday. He opined that Plaintiff can lift up to ten pounds occasionally, and can bend, stoop, and balance occasionally to

frequently. In addition, he opined that Plaintiff can constantly do fine or gross manipulation with her left and right hands; can occasionally to frequently operate a motor vehicle; can occasionally tolerate heat and cold, cannot tolerate dust, smoke or fumes exposure, and she needs to elevate her legs occasionally in an eight hour workday. Dr. Sami stated that Plaintiff suffers pain when her condition is active, and that she is likely to miss two days per month from work as a result of her impairment or treatment when her disease is controlled. Dr. Sami stated that Plaintiff is treated with methotrexate for severe eczema, and that he has encouraged her to refrain from exposure to environments that make her more at risk for infection since her medical treatment suppresses her immune system. (Tr. 251).

Plaintiff was seen by Dr. Sami on December 31, 2008. Dr. Sami noted that Plaintiff was tolerating methotrexate well, and that she did not have any new lesions.(Tr. 254). During her last visit of record, on March 31, 2009, Dr. Sami noted that Plaintiff was doing very well on methotrexate, and that she had no new exacerbation. He diagnosed her with nummular eczema/spongiotic dermatitis/atopic dermatitis, well controlled. Plaintiff's methotrexate was decreased, and she was continued on folic acid. (Tr. 262).

Medical Consultant Kimberly White completed a Physical Residual Functional Capacity Assessment on May 31, 2007. She opined that Plaintiff is limited to occasionally lifting/carrying

20 pounds and frequently lifting/carrying 10 pounds. She further opined that Plaintiff can stand/walk/sit about six hours in an eight-hour workday, and is unlimited in her ability to push and pull with hand and foot controls. Ms. White opines that Plaintiff cannot climb ladders, ropes or scaffolds at all, and can climb ramps and stairs, and can balance only occasionally. She further opines that Plaintiff is unlimited in her ability to stoop, kneel, crouch or crawl, and has no manipulative, visual, or communicative limitations. Ms. White also opines that Plaintiff should avoid even moderate exposure to hazards such as machinery and heights, and should avoid concentrated exposure to extreme cold and heat. She further opines that Plaintiff has no limitations in her exposure to noise or vibration. (Tr. 217-224).

1. **Whether the ALJ erred in failing to give substantial weight to the opinions of her treating dermatologist.**

Plaintiff raises a single issue in her appeal. Plaintiff contends that the ALJ committed reversible error in failing to give substantial weight to the opinions of her treating dermatologist, and relying instead on a non-examining state agency assessment. Defendant counters that while the ALJ noted that the state agency assessment was consistent with the record as a whole, his decision was based on his review of the entire record, and primarily on the findings in Dr. Sami's medical reports. Defendant further argues that the ALJ properly accorded Dr. Sami's opinions only partial

weight because the extent of the limitations expressed in his opinions was not supported by other evidence of record, including his own treatment notes.

With regard to the assessments, the ALJ stated as follows:

I give substantial weight to the state agency assessment, which reflects that the claimant is limited to light work with restrictions against climbing, working around hazardous machinery and heights, and exposure to environmental irritants. . . . The conclusions are well supported by the clinical examinations and testing, as discussed above, and are generally consistent with the record as a whole.

I give only partial weight to the residual functional capacity assessments completed by Dr. Sami. . . . His hand-written comments are not entirely clear, but seem to suggest that the stated limitations apply only during exacerbations of the claimant's skin disorder. In any case, according to Dr. Sami's progress records . . . , the claimant's skin condition has remained under good control as long as she is compliant with his treatment regimen and recommendations, and there is no reason to suppose that she has exacerbations of such frequency or severity that work would be precluded.

(Tr. 15).

Case law provides that the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." "Good cause" exists where: 1) the opinion was not bolstered by the evidence; 2) the evidence supported a contrary finding; or 3) opinion was conclusory or inconsistent with the doctor's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1340-41 (llth Cir. 2004); See also Lewis v. Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); Edwards v.

<u>Sullivan</u>, 937 F.2d 580, 583 (11th Cir. 1991); <u>Sabo v. Commissioner</u> <u>of Social Security</u>, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); and 20 C.F.R. § 404.1527(d). <u>See also</u> <u>Johnson v. Barnhart</u>, 2005 WL 1414406, *2 (11th Cir. Jun. 17, 2005); <u>Wind v. Barnhart</u>, 2005 WL 1317040, *6 (11th Cir. Jun. 2, 2005) (citing to <u>Crawford v. Comm'r</u> <u>of Social Security</u>, 363 F.3d 1155, 1159 (11th Cir. 2004)).

Generally, an ALJ commits reversible error where he fails to articulate the reason for giving less weight to the opinion of a treating physician. <u>MacGregor v.Bowen</u>, 786 F. 2d 1050, 1053 (11th Cir. 1986); <u>Crawford v. Comm'r of Soc. Sec</u>., 363 F. 3d 1155, 1159 (11th Cir. 2004)(per curiam)(the ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" is shown to the contrary.). Of course, it is the ALJ's duty, as finder of fact, to choose between conflicting evidence and he may reject the opinion of any physician when the evidence supports a finding to the contrary. <u>Wind</u>, 2005 WL 1317040, *6. (citing to <u>Landry v. Heckler</u>, 782 F.2d 1551, 1554 (11th Cir. 1986) and <u>Bloodsworth v. Bowen</u>, 703 F.2d 1233, 1240 (11th Cir. 1983)).[23]

---

[23]<u>See</u> <u>also</u> <u>Blake v. Massanari</u>, 2001 WL 530697, *10 n.4 (S.D. Ala. Apr. 26, 2001); 20 C.F.R. § 404.1527(d)(2). The Eleventh Circuit has repeatedly made clear that the opinion of a treating physician must be given substantial weight unless good cause is shown for its rejection. <u>See</u>, <u>e.g.</u>, <u>Lamb v. Bowen</u>, 847 F.2d 698, 703 (11th Cir. 1988); <u>Walker v. Bowen</u>, 826 F.2d 996, 1000 (11th Cir. 1987); <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279-80 (11th Cir. 1987); <u>Schnorr v. Bowen</u>, 816 F.2d 578, 581 (11th Cir. 1987); <u>McSwain v. Bowen</u>, 814 F.2d 617, 619 (11th Cir. 1987); <u>MacGregor</u> <u>v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986); <u>Wilson v.</u> <u>Heckler</u>, 734 F.2d 513, 518 (11th Cir. 1984); and 20 C.F.R. §

Based upon a careful review of the record, the undersigned finds that substantial evidence supports the ALJ's decision not to assign controlling weight to the opinions of Dr. Sami. In his assessment dated November 25, 2008, Dr. Sami opined that Plaintiff can stand one to four hours in a workday, can sit two to four hours in a workday, can occasionally lift five pounds, and can work four hours a day. (Tr. 247). Dr. Sami also opined that Plaintiff would need to elevate her legs occasionally during an eight hour workday, and that she is likely to miss two days per month due to her condition. (Tr. 251). These opinions of Dr. Sami are not supported by his treatment records. A review of Dr. Sami's treatment notes reflect that while Plaintiff had eruptive psoriasis over most of her body when she began treatment with Dr. Sami in March 2007, she experienced substantial improvement once placed on the proper medication. Plaintiff was initially prescribed methotrexate; however, that medication was discontinued when her liver function tests were elevated. In April 2007, Dr. Sami noted that Plaintiff had been prescribed prednisone, and that she experienced "significant improvement," and reported no new areas of involvement. (Tr. 189, 194). Later that month, the prednisone dosage was decreased, the methotrexate was resumed, and Plaintiff was advised not to consume any alcohol. (Tr. 189). Plaintiff's methotrexate was again discontinued in early May 2007

---

404.1527(d)(2).

when she failed to take it as prescribed and experienced mildly elevated liver function. (Tr. 188). By June 2007, Dr. Sami observed that Plaintiff was doing very well on Prednisone and methotrexate, that she had no new areas of involvement and that of the previous areas were healed. Dr. Sami noted that Plaintiff reported not consuming any form of tobacco, which he thought was the possible culprit for her previous eruption. (Tr. 243).

Dr. Sami's treatment notes for 2008 also reflect that Plaintiff's condition was under control as long as she took her medication as prescribed. In June 2008, Plaintiff reported an eruption of lesions and that she had been out of her medication for approximately one month. Plaintiff was restarted on her medications, and the notes reflect that she tolerated the medications well. (Tr. 237-238). In fact, the records reflect that by August 2008, Dr. Sami observed that Plaintiff had cleared up well, and that she was tolerating her medications. (Tr. 233). Indeed, the last treatment notes in the record, dated March 31, 2009, reflect that Plaintiff was still doing well on her mediation, and that she had no new exacerbation. These treatment records are in conflict with and do not support the limitations imposed by Dr. Sami in his assessments. Accordingly, the ALJ did not err in concluding that the opinions contained in Dr. Sami's assessments were not entitled to substantial weight.

Plaintiff also argues that the ALJ erred in relying on the

state agency assessment to find that she can engage in light work. As noted supra, the ALJ gave substantial weight to the state agency assessment which reflects that Plaintiff can perform light work. Social Security Ruling 96-6p[24] provides that findings of fact made by State agency medical consultants regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. The Ruling also provides that the medical opinions of such consultants must be considered, and that "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." 20 C.F.R. § 404.1527(f). A review of the record in this case does not establish that Kimberly White, the person who completed the RFC assessment, is a medical consultant whose opinion qualifies as a medical source opinion. In fact, the Initial Determination form, dated April 20, 2007, is signed by Kimberly White, and identifies her as a "SDM". (Tr. 41). "[A] SDM is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, or to consideration as evidence

---

[24]*(Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence ("SSR 96-6p"))*

from other non-medical sources." <u>Bolton v. Astrue</u>[25], 2008 U.S. Dist. LEXIS 38568 (M.D. Fla. May 12, 2008)(quoting <u>Velasquez v. Astrue</u>, 2008 U.S. Dist. LEXIS 64743 (D.C. Colo., Mar. 20, 2008)(internal quotation marks omitted.); <u>Casey v. Astrue</u>, 2008 U.S. Dist. LEXIS 47515 (S.D. Ala. June 19, 2008)( an RFC assessment completed by a disability specialist is entitled to no weight); <u>Hall v. Astrue</u>, 2007 U.S. Dist. LEXIS 95776 (S.D. Ala. Nov. 7, 2007) (holding that the opinion of a disability examiner "simply does not supply the substantial evidence needed to support the ALJ's determination".)

Because the ALJ based his RFC assessment on the opinion of a disability specialist, as opposed to an acceptable medical source, the ALJ's finding regarding Plaintiff's RFC is not supported by substantial evidence.   Accordingly, this case must be remanded. Upon remand, a medical source should be consulted to assist the ALJ in determining Plaintiff's RFC assessment.

**V.   <u>Conclusion</u>**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and

---

[25]In <u>Bolton</u>, the Court noted that the Commissioner had represented to the Court that the Agency has been conducting a test in Florida, among other states, involving the use of a single decision maker who makes the initial disability determination without requiring the signature of a medical consultant.

supplemental security income, is due to be **REVERSED** and **REMANDED**.

   **DONE** this **20th day of April, 2010.**

                              _____/s/ SONJA F. BIVINS_____
                              **UNITED STATES MAGISTRATE JUDGE**